774 So.2d 855 (2000)
STATE of Florida, Appellant,
v.
Pariya DARYNANI, Appellee.
No. 4D99-4172.
District Court of Appeal of Florida, Fourth District.
December 27, 2000.
*856 Robert A. Butterworth, Attorney General, Tallahassee, and Rajeev Saxena, Assistant Attorney General, West Palm Beach, for appellant.
Dennis Colleran, Fort Lauderdale, for appellee.
PER CURIAM.
In a prosecution under section 790.225, Florida Statutes (1997), against a vendor of switchblade knives, the trial court found section 790.225 unconstitutionally vague. We disagree and thus reverse and remand for further proceedings.
Section 790.225 provides as follows:

*857 (1) It is unlawful for any person to manufacture, display, sell, own, possess, or use a self-propelled knife which is a device that propels a knifelike blade as a projectile by means of a coil spring, elastic material, or compressed gas. A self-propelled knife is declared to be a dangerous or deadly weapon and a contraband item. It shall be subject to seizure and shall be disposed of as provided in s. 790.08(1) and (6).
(2) This section shall not apply to any device which propels an arrow, a bolt, or a dart by means of any common bow, compound bow, crossbow, or underwater spear gun.
(3) Any person violating the provisions of subsection (1) is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.
§ 790.225, Fla. Stat. (1997). The current version of the statute reads the same.
During the hearing on the Defendant's motion to dismiss the information on the grounds section 790.225 was unconstitutionally vague, the trial court examined the switchblade knives confiscated from the Defendant as well as information provided by the Defendant about a Russian-made ballistic knife that shoots knife blades. In ruling section 790.225 was unconstitutionally vague, the trial court concluded that it was unclear whether the statute sought to prohibit common, everyday switchblade knives or the "KGB type knife" that shoots a blade. The trial court reasoned that the term "projectile" used in the statute has "the connotation that it [the blade] springs forth in some way" as if the blade left the casing altogether. The trial court also considered the dictionary definition of "switchblade," defining that as "a pocketknife having the blade swing operated so that pressure on a release catch causes it to fly open." The trial court stated that even considering this definition, "one still would not know if 790.225 has been violated." The trial court also reasoned that the Legislature did not intend to prohibit the sale or possession of switchblade knives and that to uphold the constitutionality of the statute "would be to make the switchblade knife an illegal weapon in Florida."
Because the statute here does not implicate conduct protected under the First Amendment, the vagueness analysis must be limited only to whether the Defendant's conduct fell within the scope of the statute, without regard to other possible applications of the statute. See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). Applying this analysis, section 790.225 is not unconstitutionally vague.
A statute is considered unconstitutionally vague if it does not give people of ordinary intelligence fair notice of what constitutes forbidden conduct. See State v. Muller, 693 So.2d 976 (Fla.1997). Where a statute does not specifically define words of common usage, a dictionary may be consulted to ascertain the plain and ordinary meaning the Legislature intended to ascribe to the term. See Barr v. State, 731 So.2d 126 (Fla. 4th DCA 1999). The statutory language should be read from the perspective of the average reader, but the court need not be concerned with odd scenarios that might test the limits of a statute or leave question about exactly what a certain term might cover. See United States v. Powell, 423 U.S. 87, 93, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975); Johnson v. State, 701 So.2d 367 (Fla. 2d DCA 1997). Likewise, lack of precision or the lack of clarity in some peripheral cases is insufficient reason to strike a statute as unconstitutionally vague. See State v. Manfredonia, 649 So.2d 1388 (Fla.1995) (quoting Roth v. United States, 354 U.S. 476, 491-92, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957)). So long as "it is evident to citizens and factfinders" whether something is covered "under any intended definition" of a term and so long as the term appeals to the "norms of the community, which is precisely the gauge by which vagueness is *858 to be judged," the statute will survive a vagueness challenge, even if the Legislature's chosen words do not exemplify a "model of clarity." L.B. v. State, 700 So.2d 370, 372, 373 (Fla.1997), superseded by statute on other grounds as stated in State v. A.M., 765 So.2d 927 (Fla. 2d DCA 2000). "[A]ll doubts as to the validity of a statute are to be resolved in favor of constitutionality where reasonably possible." Dep't of Law Enforcement v. Real Prop., 588 So.2d 957, 961 (Fla.1991).
The language upon which the Defendant and the trial court focused was that portion of section 790.225 that prohibits "a self-propelled knife which is a device that propels a knifelike blade as a projectile by means of a coil spring, elastic material, or compressed gas." § 790.225(1). Particular concern was given to "self-propelled" and "projectile," neither of which are defined elsewhere in chapter 790. Thus, the common usage of those words should be considered.
"Self-propelled" means, simply, propelled forward by one's or its own force or momentum. See, e.g., Webster's Third New International Dictionary 2061 (1993). A "projectile" is a projected object that either has capacity for self-propulsion or does not, so long as it is capable of being thrust or hurled forward. See id. at 1813; Webster's II New College Dictionary 884 (1995).
The Defendant and the trial court tended to focus on these words in isolation from the word "knife." Doing so led them to the conclusion that the statute must prohibit something that acts like a missile, a knife blade shot completely clear of the rest of the weapon, like a bullet leaves the chamber of a gun. While that may be so, nothing in the definitions of "self-propelled" and "projectile" indicates that these words describe only those types of weapons in which a blade is shot independent from and clear of the rest of the weapon.
Moreover, the words "self-propelled" and "projectile" are not used in isolation. The word "projectile" is used to merely explain how the knife's blade might be propelled, i.e., that it is capable of being thrust or hurled forward, and the remainder of the sentence"by means of a coil spring, elastic material, or compressed gas"specifies the manner of propulsion. § 790.225(1). When the statute is read as a whole, the statute imparts to a person of common intelligence and understanding that possessing a switchblade knife would be a crime. It is common knowledge that a switchblade operates on a coil spring or other device that springs the blade out from the handle or casing. Reading the statutory language as a whole, it seems apparent the Legislature intended to distinguish switchblade knives from folding-type knives that require manual and deliberate removal of the knife blade from the handle or casing. Using such terms, then, it seems apparent the Legislature intended to make the possession of switchblade knifes, which "propel a knifelike blade as a projectile by means of a coil spring, elastic material, or compressed gas," illegal while allowing possession of other types of knives or pocketknives. See § 790.225(1).
A person of common intelligence can understand that a switchblade knife is "self-propelled" in the sense that the blade is propelled by means of a coil spring, elastic material, or compressed gas. See id. Accordingly, section 790.225 is not unconstitutionally vague as applied to the Defendant. We reverse the trial court's order and remand for further proceedings.
REVERSED AND REMANDED.
GUNTHER, STONE and POLEN, JJ., concur.